UNITED STATES FIDELITY AND
GUARANTY COMPANY

v.

Edwin A. ROSSO.

Supreme Judicial Court of Maine.

Argued Jan. 14, 1987.

Decided Feb. 23, 1987.

Rudman & Winchell, Dawn M. Pelletier (orally), John W. McCarthy, Bangor, for plaintiff.

Vafiades, Brountas & Kominsky, Marvin H. Glazier (orally), Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

Edwin A. Rosso (Rosso) appeals from a judgment entered by the Superior Court (Penobscot County) in favor of his insurer, United States Fidelity and Guaranty Company (USF & G). After a jury-waived trial, the Superior Court held that USF & G was not required to defend or indemnify Rosso in a negligence action brought against him by William D. Rilings, Jr. For the reasons set forth herein, we affirm the judgment.

I.

In late August, 1981, William D. Rilings, Jr. (Rilings) was injured when he fell from a load of hay piled in Rosso's pick-up truck. In January, 1984, Rilings, through his father, brought an action against Rosso for his injuries.

At the time of the accident, Rosso had a "Business Auto Policy" with USF & G covering his pick-up truck. The policy contained an exclusion provision as follows:

This insurance does not apply to:

. . . . .

Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits.

USF & G agreed to defend Rosso in Rilings' suit against him, but reserved the right to withdraw that defense and deny indemnification at any time.

While Rilings' suit was pending, USF & G brought an action against Rosso seeking a declaratory judgment that it "had no responsibility to either indemnify or provide defense" to Rosso because Rilings' injury allegedly arose out of and in the course of his employment by Rosso. After answering the complaint, Rosso filed a motion for summary judgment on the duty to defend issue, contending that facts alleged on the face of Rilings' complaint were sufficient to invoke USF & G's duty to defend. He later withdrew that motion, however, without prejudice.

Trial commenced on USF & G's declaratory judgment action on May 13, 1986. The facts adduced at trial are as follows: In 1981, Rosso was a logger and forester who lived on a 40 acre farm with his family. He raised livestock mostly for his own use, but sold excess dairy products to the public. During the summer, Rosso cut hay from his own land and from his neighbor's land for use as bedding and feed for his animals. In 1981, Rosso's income from his farm was about one tenth of his total income. Rilings helped Rosso with his hay operations during the summer of 1981 and was paid $2.50 per hour. On August 26, 1981, he sustained personal injuries when he fell from a load of hay that was being transported from a neighbor's land to Rosso's barn.

The Superior Court concluded that Rilings was injured while working as an employee of Rosso. As a result, it held that because of the exclusion provision in Ros-

so's insurance policy, USF & G was not required to defend or indemnify Rosso in Rilings' action against him.

## II.

Initially, we clarify the procedural posture of the issues presented in this case.

■ Normally, an insurer's duty to defend should be decided summarily and in favor of the insured if there exists any legal or factual basis, which could be developed at trial, that would obligate the insurer to pay under the policy. *E.g. L. Ray Packing Company v. Commercial Union Insurance Company*, 469 A.2d 832, 833 (Me.1983); *Travelers Indemnity Company v. Dingwell*, 414 A.2d 220, 224 (Me.1980). We have said that "[w]e see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts [of the underlying tort action] in a suit against his insurer in order to obtain a defense." *Id.* at 227.

■ The insured's duty to indemnify, on the other hand, may depend on the actual facts or legal theory behind the underlying action against the insured by the injured party. *See American Policyholders' Insurance Company v. Cumberland Cold Storage Company*, 373 A.2d 247 (Me. 1977). In that situation, it is first necessary to decide the duty to defend issue before turning to any consideration of the duty to indemnify. *Id.* There are other circumstances, however, where a declaratory judgment may be entered simultaneously as to both the duty to defend and the duty to indemnify. *See American Policyholders' Insurance Company v. Cumberland Cold Storage Company*, 373 A.2d at 250. Furthermore, if the insured goes to trial on the indemnity issue without seeking a preliminary determination of the duty

to defend, he may be deemed to have waived his right to object to a simultaneous declaratory judgment against him on the duty to defend. *See American Policyholders' Insurance Company v. Kyes*, 483 A.2d 337, 339–40 (Me.1984).

■ In the instant case, Rosso submitted to a trial on both the duty to defend and the duty to indemnify. Since he withdrew his motion for summary judgment on the first issue and consented to trial on both issues, we should not fault the Superior Court for deciding the issues together.[1] *See Kyes* (simultaneous determination of both issues not error where insured submitted to trial on ultimate coverage issue).

## III.

Rosso presents two arguments on appeal. First, he argues that the Superior Court's conclusion is legally erroneous because, at the time of the accident, Rilings was helping Rosso with farm operations that were not part of Rosso's regular business, and the working relationship was casual and neighborly. He contends that, as a matter of law, such casual workers are not "employees" within the meaning of the exclusion provision of his insurance policy. Second, he argues that Rilings was a "domestic employee," not entitled to workers' compensation, and, as a result, was not excluded from coverage because of the second clause of the exclusion provision. We consider each argument in turn.

In *Lunt v. Fidelity & Casualty Company of New York*, 139 Me. 218, 28 A.2d 736 (1942), this Court was confronted with an issue similar to that presented here. In that case, former employees were asked by the insured to work for him in his potato delivery business because he found himself without help on a certain day. They

1. We point this out, despite the fact that the parties did not raise this procedural issue in their briefs, in order to place this case in the context of our concern that simultaneous declaratory judgments on an insured's duties to defend and indemnify be limited to particular situations. *Cf. American Policyholders' Insurance Company v. Cumberland Cold Storage Company*, 373 A.2d at 250 (simultaneous judgments may be appropriate when case involves

such issues as nonpayment of a premium, cancellation of a policy, failure to cooperate, or lack of timely notice); *See also American Policyholders' Insurance Company v. Kyes*, 483 A.2d at 339–40 (holding that simultaneous judgment appropriate because insureds waived right to object to it, but expressly declining to expand list of "appropriate instances" for such judgments set forth in *Cumberland Cold Storage* ).

obliged and were then injured in a car accident while riding in the insured's automobile. The insurance policy covering the automobile excluded injuries to employees "in an accident arising out of the maintenance or use of the automobile and in the business of" the insured. 139 Me. at 223, 28 A.2d at 739. Finding no ambiguity, this Court interpreted that language according to its plain meaning. The Court then set forth the standards for determining the existence of an employment relationship as follows:

> [A] sufficient contract of employment is created by a mutual agreement that one is to labor in the service of another. * *
> [T]he [employment] relationship exists:
> "Whenever one person stands in such a relation to another that he may control the work of the latter.... The essential elements are ... control and direction ... of the employment ..., and ... the right to employ ... and ... discharge.... If these elements are wanting, the relation does not exist."
> Conversely it does exist when these named elements are present....

*Id.*, 139 Me. at 223–224, 28 A.2d at 739–40, quoting *Flaherty v. Helfont*, 123 Me. 134, 136, 122 A. 180, 181 (1923) (citations omitted).

We find the language of the exclusion clause in Rosso's insurance policy to be unambiguous. It clearly applies to "any employee of the insured arising out of and in the course of employment by the insured." Therefore, we construe this language according to its plain meaning. *Id.* at 739.

Applying the test set forth in *Lunt*, we find all the necessary elements that are required for establishing an employment relationship present in Rosso's relationship with Rilings. When Rilings was injured, he was working for Rosso for an hourly wage. Rosso controlled and directed all aspects of the hay operation. He also had the right to discharge Rilings. Given these circumstances, Rilings was an employee of Rosso at the time of the accident, and was therefore excluded from coverage under the clear language of the policy.[2]

Rosso contends, on the other hand, that Rilings was a "domestic employee not entitled to workers' compensation benefits" and, therefore, was not excluded from coverage according to the second clause of the exclusion provision. We cannot agree. Even if we were to find that term ambiguous and construe it most strictly against the insurer, *see, e.g., Baybutt Construction Corporation v. Commercial Union Insurance Company*, 455 A.2d 914, 921 (Me.1983), we would not reach a different conclusion. Courts in other jurisdictions that have construed the same or similar language from the exclusion provisions of other insurance policies have held that a "domestic employee" is one that works in the house or on household chores. *See generally*, Annot., *Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding from Coverage Injury or Death of Employee of Insured*, 48 A.L.R.3d 13, 84–87 (1973). Rilings does not fit that category of employee.[3]

Since Rilings was an employee of Rosso at the time of his injury and was not a "domestic employee," his injuries were excluded from coverage under Rosso's insurance policy with USF & G.

The entry is: Judgment affirmed.

All concurring.

---

**2.** The fact that Rosso's hay operation was not part of his regular business as a forester or logger is of no consequence under the plain terms of the insurance contract, which excludes coverage for "any employee."

**3.** The case relied upon by Rosso, *Hall v. United States Fidelity & Guaranty Co.*, 107 Ohio App. 13, 7 Ohio Ops.2d 344, 79 Ohio L.Abs. 321, 155 N.E.2d 462 (1957), is distinguishable from the case at bar because it involved an employee who lived and worked in the insured's house as well as on the insured's farm, where he was injured.