PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY
*vs.* LEO R. ALLAIRE & others.

No. 86-1343.

Suffolk. November 9, 1987. — December 11, 1987.

Present: GREANEY, C.J., KAPLAN, & GRANT, JJ.

*Insurance*, Construction of policy, Coverage, Homeowners' insurance. *Motor Vehicle*, Insurance. *Practice, Civil*, Counterclaim and crossclaim. *Words*, "Dead storage."

An unregistered, uninsured fifteen year old motor vehicle, which was stored on private residential property insured under a homeowners' policy, and which, from time to time, was rendered operable and driven to a position on the property where the owner, a named insured, could perform maintenance work on it, was not in "dead storage" for purposes of the liability coverage provisions of the policy and thus the policy did not cover a claim for personal injuries caused by the operation of the vehicle. [161-162]

In a civil action seeking a determination of insurance coverage, the judge erred, after deciding the claim before him, in dismissing a counterclaim, where no aspect of the counterclaim was litigated or intended to be litigated. [162]

CIVIL ACTION commenced in the Superior Court Department on September 19, 1983.

The case was heard by *William C. O'Neil, Jr.*, J., on a stipulation by counsel.

*John A. Mavricos* for Leo R. Allaire.

*Michael J. O'Reilly* for the plaintiff.

GRANT, J. This is an action brought in the Superior Court by the plaintiff insurance company to secure a declaratory judgment to the effect that the plaintiff has no liability to any of the defendants under § II, Coverage E ("PERSONAL LIABILITY"), of a homeowners' policy issued by the plaintiff to Adelard W. and Josephine Allaire, the insureds. Compare

*Ranger Ins. Co.* v. *Air-Speed, Inc.*, 9 Mass. App. Ct. 403 (1980). The other defendants are Alan Allaire, who is the son of Adelard and Josephine and an additional insured under the policy, and Leo R. Allaire, brother of Adelard, uncle of Alan and the person injured in the circumstances hereinafter described. All the defendants duly answered the complaint; Leo's answer was accompanied by a counterclaim for damages under G. L. c. 176D, § 3 (9) (n), and G. L. c. 93A, §§ 2 and 9. The counterclaim was severed out, and the single question of coverage was, by agreement, submitted to a judge sitting without jury. He found for the plaintiff, and a judgment was entered which declared (in effect) that the plaintiff has no liability to any of the defendants under § II, Coverage E, and dismissed Leo's counterclaim. All the defendants appealed.

1. The following is a summary of the salient facts gleaned from the judge's unchallenged subsidiary findings of fact and from the undisputed testimony of Alan. Alan owned a 1966 Ford Bronco which he had purchased in 1980 and which he kept insured (G. L. c. 90, § 34A) and registered (G. L. c. 90, § 2) until some time in the spring of 1981, when he purchased a motorcycle which he proceeded to insure and register. At that time Alan cancelled the registration and insurance on the Bronco (vehicle) and took it off the road, but with the intention of reinsuring and reregistering it at some undetermined time before the end of 1981. He parked the vehicle on his parents' property at a point located opposite their house and on the other side of the private way which traverses their property. He removed the battery from the vehicle. From time to time he would replace the battery and drive the vehicle across the way and onto the driveway leading to the garage which is attached to the house. He would do so for the purpose of working on the vehicle because the driveway provided convenient access to various tools and an electric outlet located in the garage.

On the morning of October 31, 1981, Alan placed the battery in the vehicle and drove it onto the driveway, where he performed an engine tuneup. The engine was skipping. He asked Leo, who was visiting, to listen to the engine. They detected

a loose connection in an ignition wire leading to one of the spark plugs. Alan shut the engine down and tightened the connection. He got back in the vehicle to restart the engine; the hood was up, with Leo in front of the vehicle and out of Alan's sight. Alan restarted the engine. The vehicle unexpectedly lurched forward, striking Leo and injuring him.

Section II, "COVERAGE E PERSONAL LIABILITY," insures against claims "brought against any insured for damages because of bodily injury [1] . . . to which the coverage applies . . . ." Section II, "EXCLUSIONS," provides in pertinent part that Coverage E "1 . . . do[es] not apply to bodily injury . . . e. arising out of the ownership, maintenance, use, loading or unloading of: . . . (2) a motor vehicle owned . . . by . . . any insured." In par. 5 of the "DEFINITIONS" part of the policy we find that " 'motor vehicle' means: . . . a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle." The parties are at odds over whether the vehicle in question was in "dead storage" at the time of the accident. If it was, there is coverage and the defendants prevail; if it was not, there is no coverage and the plaintiff prevails.

We are compelled to side with the plaintiff and the trial judge. When the "dead storage" exception in the second sentence of the par. 5 definition of "motor vehicle" is read in conjunction with par. 1 e (2) of the "[e]xclusions" from § II, Coverage E, it is apparent that a motor vehicle in "dead storage" does not include one owned by or lent to an insured which is located on the insured premises and is being "maintained[ed or] use[d]" within the meaning of par. 1 e. *Broadway* v. *Great Am. Ins. Co.*, 465 So. 2d 1124, 1125-1126, 1127, 1129 (Ala. 1985). *Holliman* v. *MFA Mut. Ins. Co.*, 289 Ark. 276, 278-280 (1986). Compare *Sharpe* v. *State Farm Fire & Cas. Co.*, 558 F.

---

[1] Leo has an action for damages pending against the other defendants in the Superior Court.

Supp. 10, 10-11 (E.D.Tenn. 1982).[2] There is no dispute that "maintenance" was being performed on the vehicle at the time of the accident. Compare *Broadway* v. *Great Am. Ins. Co.*, 465 So. 2d at 1124-1125, 1127-1128; *Holliman* v. *MFA Mut. Ins. Co.*, 289 Ark. at 278-279; *Indiana Ins. Co.* v. *Winston*, 377 So. 2d 718, 719 (Fla. App. Dist. Ct. 1979); *Volkswagen Ins. Co.* v. *Dung Ba Nguyen*, 405 So. 2d 190, 192, 195 (Fla. App. Dist. Ct. 1981). Contrast *Nationwide Mut. Fire Ins. Co.* v. *Allen*, 68 N.C. App. 184, 187-188, 189 (1984).

We hold that the trial judge was correct in concluding that the vehicle was not in "dead storage" at the time of the accident and that the policy does not cover Leo's claim.

2. Counsel had stipulated, with the approval of the assignment judge, that the only issue to be tried would be the one considered in part 1 of this opinion. The trial judge was notified at the outset of the proceedings of the stipulation and the terms of the assignment and appeared to acquiesce in both. As no aspect of Leo's counterclaim was litigated before him, it was error for the trial judge to dismiss the counterclaim.[3] There must be further proceedings thereon in the Superior Court. However, we urge counsel for Leo to give careful consideration to whether he will be able to prove either liability or damages under G. L. c. 176D, § 3 (9) (*n*), or under G. L. c. 93A in view of the fact (as we have held) that there is no coverage available to satisfy Leo's claim. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 676 n.4 (1983).

The judgment is to be modified by striking out the provision dismissing the counterclaim of Leo R. Allaire and, as so modi-

---

[2] The defendants point to an unpublished decision of the Tennessee Court of Appeals which makes no effort to coordinate the various policy provisions and which reaches a conclusion contrary to the one reached in the cases cited above. If the court did not care to publish its opinion, we see no reason to consider or cite it. See *Lyons* v. *Labor Relations Commn.*, 19 Mass. App. Ct. 562, 566 n.7 (1985), *S. C.*, 397 Mass. 498 (1986).

[3] The error may be the result of the all too common practice of allowing assistant clerks to prepare and enter judgments which require the personal attention and approval of the judge under Mass.R.Civ.P. 58 (a) (2), 365 Mass. 826 (1974). The space for the judge's signature on the form of judgment employed in this case was left blank.

fied, is affirmed and is to have the effect of a final judgment entered under Mass.R.Civ.P. 54 (b), 365 Mass. 821 (1974); the case is to stand for further proceedings in the Superior Court in accordance with this opinion.

*So ordered.*