**MIDWEST FAMILY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Dale E. KARPE, Respondent.**

**No. CO–88–1117.**

Court of Appeals of Minnesota.

Nov. 1, 1988.
Review Denied Dec. 21, 1988.

Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for appellant.

William R. Sieben, Peter H. Berge, Schwebel, Goetz & Sieben, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and NORTON and HACHEY,* JJ.

## OPINION

HUSPENI, Judge.

In its declaratory judgment action, appellant Midwest Family Mutual Insurance Company moved for a summary judgment that the uninsured motorist clause in its automobile insurance policy did not cover injuries sustained by respondent Dale E. Karpe during the improper use of an auto-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

motive maintenance tool by an uninsured third party. The trial court found respondent entitled to recover uninsured motorist benefits under the policy and summary judgment to that effect was entered. We affirm.

## FACTS

This case is appealed on stipulated facts. Respondent Dale E. Karpe (Karpe) was injured at his work place, Christensen Auto Body shop (Christensen) when the chain of Christensen's power post broke and struck him. Co-employee Ken Ableitner (Ableitner) was using the power post in an attempt to repair the blocked tire bead of a wheel he wanted to put on his uninsured vehicle. The wheel had not been previously attached to the vehicle.

A power post is a tool specifically designed for automotive maintenance though not for use on tires or wheels. Ableitner was off duty and improperly using the power post when the chain broke. At the time of the accident, Ableitner's vehicle was approximately 20 feet from the power post.

Alleging his injuries occurred during maintenance of Ableitner's vehicle, Karpe filed for uninsured motorist benefits under the terms of his auto insurance policy issued by appellant Midwest Family Mutual Insurance Company (Midwest). The policy states:

UNINSURED MOTORISTS COVERAGE

INSURING AGREEMENT

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. Sustained by a covered person; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

\* \* \* \* \* \*

Midwest refused Karpe's request for coverage and sought a declaratory judgment that the policy did not cover Karpe's circumstances. Upon the trial court's determination that Karpe's injuries were covered by the policy, Midwest appealed.

## ISSUES

1. Did respondent's injuries arise from the maintenance of a motor vehicle?

2. Did respondent's injuries occur within the course of a business of repairing, servicing or otherwise maintaining a motor vehicle under Minn.Stat. § 65B.43, subd. 3?

## ANALYSIS

### I.

Determination of whether an accident is the result of the use or maintenance of a motor vehicle should "turn on the particular facts presented." *Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975) (citations omitted). Here, the parties stipulated to the facts.

Minnesota's "no fault" insurance act states:

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include (1) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, \* \* \*

Minn.Stat. § 65B.43, subd. 3 (1984). Because the parameters of "maintenance" under this section have not been prescribed, the supreme court has indicated that in "borderline cases" the courts should keep in mind the policy of the "no fault" act that definitions be limited "to activities whose costs should be allocated to motoring as a part of an automobile insurance package." *See Marklund v. Farm Bureau Mutual Insurance Company*, 400 N.W.2d 337, 339 (Minn.1987) (quoting *Commissioner's Comments, Unif. Motor Veh. Acc. Reparations Act* § 1, 14 U.L.A. 55–56 (1980) (footnote omitted)).

In determining whether Karpe's injuries arose from maintenance of Ableitner's vehicle, we use the three part maintenance and use analysis set forth in *Continental Western Insurance Company v. Klug*, 415 N.W.2d 876, 878 (Minn.1987).

■ Initially the court must determine whether the vehicle involved was "an 'active accessory' in causing the injury." *Id.* (citations omitted). Relying on *Marklund*, Midwest argues Ableitner's vehicle was not an "active accessory" to Karpe's injuries. This reliance is misplaced. In *Marklund*, the supreme court denied economic loss benefits noting that Marklund "had *completed* all maintenance functions he intended to perform on his car prior to the time that he fell." *Marklund*, 400 N.W.2d at 340 (emphasis added). Here, Karpe's injury occurred *while* Ableitner was attempting to repair a tire. We find this distinction critical in view of the emphasis placed by the *Marklund* court on the chronological occurrence of Marklund's injury relative to his completion of maintenance activities involving his vehicle.

Citing *Timmers v. State Farm Mutual Automobile Insurance Company*, 374 N.W.2d 338 (Minn.Ct.App.1985), Midwest also argues that the presence of Ableitner's vehicle was a mere fortuity, emphasizing that the wheel had not previously been attached to the vehicle. These facts are not determinative. Initially, it is natural that the vehicle be nearby the location where its wheel or tire is being changed. Secondly, we do not find it critical that the wheel had not yet been attached to Ableitner's vehicle. The blocked tire bead prevented the tire from holding air. Few people would purposely fit a flat tire to a vehicle before repairing it. Finally, removal of a tire for replacement or repair is a common activity for motorists. If the vehicle in such cases is not deemed an "active accessory" in injuries resulting from tire repair, one of the most common acts of motor vehicle repair would fail to meet the definition of "maintenance" for insurance purposes. The trial court did not err in finding Ableitner's vehicle an active accessory to Karpe's injuries.

Under the second *Klug* factor, the court is to determine

> whether an act of independent significance occurred, breaking the causal link between 'use' of the vehicle and the injuries inflicted.

*Klug*, 415 N.W.2d at 878. Relying on *Timmers*, Midwest essentially argues that Ableitner's improper use of the power post was an act of independent significance. We disagree. In *Timmers*, where a drill press which was apparently faulty or improperly locked injured the insured, we stated:

> The defective or improperly locked drill press stand could have caused the injury to [Timmers] for any operation he undertook; thus the fact that he was injured while making repairs to an automobile part was merely a fortuitous circumstance.

*Id.* at 339 (citations omitted).

Here, Ableitner improperly used the power post to break the bead on his tire. A power post can be used only for automotive maintenance while a drill press has a myriad of other uses. Midwest overlooks this key factor in relying on *Timmers*.

We do not find it "merely a fortuitous circumstance" that equipment exclusively for use in auto maintenance was so used. We conclude that Ableitner's action did not amount to an independent act breaking the causal nexus between the tire repair and Karpe's injuries.

The final consideration under *Klug* requires that the court "determine what type of 'use' of the automobile was involved." *Klug*, 415 N.W.2d at 878. The *Klug* court stated that "coverage should exist only for injuries resulting from use of an automobile for transportation purposes." *Id.* (citing *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985)). While it is undisputed that Ableitner's vehicle was used for transportation purposes, the "use" prong of the *Klug* analysis is less significant in "maintenance" cases such as here than it is in "use" cases like *Klug*. This is because maintaining a motor vehicle generally presupposes use of the vehicle for transportation purposes which, in turn, sat-

isfies the "use" element of the *Klug* test. Such an analysis is consistent with pre-*Klug* "maintenance" cases embodying only the "causal connection" and "active accessory" prongs of what became the *Klug* analysis. *See, e.g., Marklund,* 400 N.W.2d at 340; *Brehm v. Illinois Farmers Insurance Co.,* 390 N.W.2d 475, 476–77 (Minn.Ct. App.1986).

## II.

■ Minn.Stat. § 65B.43, subd. 3 states: Maintenance or use of a motor vehicle does not include (1) conduct *within the course of a business* of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, * * *

(Emphasis added.) Midwest argues that application of this section precludes coverage in this case. We find the statute inapplicable. While Ableitner was on his employer's premises at the time of the accident, he was off duty and was repairing a wheel for his own vehicle. Such activity is beyond the scope of auto body work done by Christensen. It is clear that Ableitner's activities were for his personal benefit, not in furtherance of his employer's course of business, and therefore do not fall within the statutory exception to maintenance.

## DECISION

Coverage for injuries sustained during maintenance of an automobile is not precluded by the improper use of an automotive maintenance tool. Additionally, automotive maintenance performed by an off-duty auto body shop employee on his personal vehicle on auto body shop premises and with auto body shop equipment, was not in a "course of a business" under Minn. Stat. § 65B.43, subd. 3. The trial court did not err in finding Karpe's injuries covered by his uninsured motorist policy.

AFFIRMED.