**NORTH STAR MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Raymond B. CARLSON, et al., Kevin J. Koen, Respondents,**

**National Farmers Union Insurance Company, Appellant,**

**National Family Insurance Company, Defendant.**

**No. C1–88–2504.**

Court of Appeals of Minnesota.

July 25, 1989.

Review Denied Sept. 21, 1989.

**850**

John D. Kelly, Richard D. Leighton, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for North Star Mut. Ins. Co.

Frank Yetka, Rudy, Prevost, Gassert, Yetka, Korman & Belfry, Cloquet, for Raymond B. Carlson, et al.

Kenneth D. Butler, Mark S. Rubin, Van Evera, Clure, Butler & Michaelson, P.A., Duluth, for Nat. Farmers Union Ins. Co.

Richard P. Mahoney, Gregory A. Zinn, Mahoney, Dougherty and Mahoney, Minneapolis, for Nat. Family Ins. Co.

Heard, considered and decided by CRIPPEN, P.J., and NORTON and MULALLY *, JJ.

## OPINION

EDWARD D. MULALLY, Judge.

National Farmers Union Insurance Company (National Farmers) appeals the trial court's declaratory judgment determining that (1) National Farmers' homeowners policy provides coverage for injuries sustained by respondent Kevin Koen and (2) respondent North Star Insurance Company's (North Star's) homeowners policy does not provide coverage for Koen's injuries. We reverse on both determinations.

## FACTS

Respondents Raymond and Marie Carlson, husband and wife, owned the remainder interest in a 40–acre parcel of land (the property) in Carlton County. Annie Carlson, Raymond's mother, lived on the property and held the life estate interest.

Sometime in the late winter of 1985, Raymond, who lived with his wife on an adjoining 40–acre parcel, decided to hold an auction on the property. Other than giving Raymond permission to hold the auction, and asking him to sell an old record player of hers, Annie Carlson had no involvement in the auction. The auction was intended to pay Raymond's outstanding medical bills for a recent injury. Although the record does not contain an exhaustive list of sale items, it appears that farm implements, motorized vehicles and miscellaneous household items were to be sold.

Raymond asked respondent Paul Carlson (his son) and Kevin Koen if they would help with the auction, and they agreed. Koen lived several miles away from the Carlsons and had grown up with Paul, always being treated as one of the Carlson family. Although nothing was expressly stated, Raymond and Koen tacitly agreed Koen would be paid for helping out with the auction.

During the week leading up to the auction, Kevin Koen worked several hours a day performing duties such as emptying out the garages and barn, loading items onto a hay wagon, and otherwise preparing items for sale. On the day before the auction Raymond informed Paul and Koen that he wanted to sell an old GMC single axle semi-tractor, which had a fifth wheel mounted to the rear, and a wagon attached behind. The GMC was located behind the barn in an area Raymond described as a junkyard. The GMC had no battery in it, had not been driven or otherwise moved for over four years, and was overgrown with hay and weeds.

Raymond Carlson put a battery into the GMC and attempted to jumpstart it with his 1979 Ford pickup. To everyone's surprise, the GMC started and continued to run. While the GMC was running, the

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

pickup stalled. Consequently, they attached a chain between the GMC and the pickup and used the GMC to tow the pickup about 200 feet out to the road area where the auction was to take place the next day.

When the auction began the next day, the GMC and pickup were still attached to each other by the chain. Raymond directed Koen to remove the chain, but Koen could not do so because the chain was too taut and neither vehicle would move. Apparently, the pickup still would not start and the GMC was out of gasoline. Raymond then directed Koen to put gasoline into the GMC, which he did, but the GMC still would not start.

At some point, Paul Carlson stepped in to attempt to start the GMC. Soon thereafter, Raymond joined them and cut the top off a pop can and poured gasoline into it, instructing Paul to prime the carburetor and simultaneously turn the ignition switch. (The distance between the carburetor and the ignition switch in the GMC was short enough so that someone could actually sit in the driver's seat, turn the ignition switch and prime the carburetor.) Raymond stood outside the passenger door and Koen stood on the driver's side running board. While Paul was turning the switch and priming the carburetor, the can of gasoline burst into flames. Raymond immediately yelled for Paul to throw the can out the door, which he did, unfortunately striking Koen in the chest. Paul was not seriously injured, but Koen was burned on his hands, chest and face.

The auction continued and some unidentified person bought the GMC and drove it away. Neither that person nor the GMC has been seen since. Raymond paid Koen $100 as wages for the week.

Koen commenced a personal injury action against Raymond, Marie and Paul Carlson, alleging Raymond and Marie as landowners, and Raymond and Paul as participants in attempting to get the GMC started, were negligent. Annie Carlson was not named a defendant in the personal injury action.

Both Annie Carlson, as life tenant, and Raymond and Marie Carlson, as fee owners, had their own homeowners policies. Annie's policy was issued by National Farmers and Raymond and Marie's policy was issued by North Star. Both provide liability and medical payments to others coverages.

As to liability coverage, the North Star policy states that North Star will pay "all sums for which any insured[1] is legally liable because of bodily injury caused by an occurrence to which this coverage applies." It further provides that North Star "will defend any suit seeking damages for bodily injury not excluded by the policy." As to medical payments to others coverage, the policy states that North Star will "pay the necessary medical expenses [from] an accident causing bodily injury to which this coverage applies." However, both personal liability and medical payments to others coverages are excluded where the liability and medical expenses "result [from] the ownership, maintenance, use, loading or unloading * * * of motorized vehicles." This motorized vehicle exclusion, however, "does not apply to bodily injury to a person while performing duties as a domestic employee of an insured."

National Farmers' pertinent liability provision states:

If a claim is made or a suit is brought against any *insured*[2] for damages because of bodily injury * * * to which this coverage applies, we will:

a. Pay up to our limit of liability for the damages for which the insured is legally liable; and

b. Provide a defense at our expense by counsel of our choice.

1. "Insured" is defined in the Northstar policy as "you [Raymond and Marie Carlson] and * * * any person while performing duties as a domestic employee of the insured."

2. "Insured" is defined in the National Farmers policy as "you [Annie Carlson], and * * * residents of your household; [and] * * * any person engaged in your employment."

The pertinent medical payments to others coverage provision states:

> We will pay the necessary medical expenses incurred * * * within three years from the date of an accident causing bodily injury.

*Id.* Personal liability and medical payments to others coverages do not apply, however, if the bodily injury

> aris[es] out of the ownership, maintenance, use, loading or unloading of;
> * * *
>
> 2. a motor vehicle owned or operated by, or rented or loaned to any insured.

*Id.* In the definition section of the policy, however, the policy states "a motorized land vehicle in dead storage on an insured location is not a motor vehicle." Therefore, bodily injury arising out of ownership, maintenance, use, loading or unloading of a motorized vehicle in dead storage *is* covered.

After being given notice of the underlying personal injury action, North Star commenced a declaratory judgment action against National Farmers, seeking judgment that North Star had no duty to defend and indemnify Raymond, Marie and Paul and that National Farmers did have the duty to defend and indemnify. Raymond, Marie and Paul Carlson responded with a counterclaim against North Star alleging that North Star did in fact have a duty to defend and indemnify them under its homeowners policy. The three Carlsons also crossclaimed against National Farmers alleging National Farmers as well had a duty to indemnify under the homeowners policy issued to Annie Carlson.[3] Annie Carlson, however, was never joined in this declaratory judgment action by any party at any time.

After a court trial, the trial court concluded North Star had no duty to defend and indemnify pursuant to its policy because the accident resulted from the maintenance or use of a motorized vehicle. In reaching this conclusion, it determined the domestic employee exception to the motorized vehicle exclusion did not apply because, although Koen was Raymond's employee, he was not a domestic employee.

The trial court then determined National Farmers did have a duty to defend and indemnify pursuant to its policy because it determined the GMC was in "dead storage," and therefore was not a "motor vehicle" within the policy's definition. Consequently, the trial court concluded the policy's motor vehicle exclusion was inapplicable.

National Farmers moved for a new trial or amended findings, conclusions and judgment. The trial court subsequently denied National Farmers' post-trial motion and this appeal followed.

## ISSUES

1. Did the trial court err in determining National Farmers must defend and indemnify Raymond and Marie Carlson and Paul Carlson under a policy issued to Annie Carlson, even though Raymond and Marie Carlson and Paul Carlson are not "insureds" under the policy?

2. Did the trial court err in determining the GMC was in "dead storage" at the time of the accident, and thus not subject to the policy's motor vehicle exclusion?

3. Did the trial court err in determining that Kevin Koen was not a domestic employee of Raymond Carlson and that, therefore, the domestic employee exception to the motorized vehicle exclusion did not apply?

## ANALYSIS

1. The trial court determined that National Farmers

---

**3.** North Star also sought declaratory judgment against defendant National Family Insurance Co., which insured Raymond Carlson and his vehicles under an automobile liability insurance policy. The trial court determined that no coverage was available under the National Family policy because the GMC was not listed as an insured vehicle in the policy. This portion of the trial court's determination is not challenged on appeal by any party.

has an obligation of coverage and a duty to defend under its policy issued to Annie Carlson for damages claimed by Kevin J. Koen as a result of [the] accident.

As discussed above, two types of coverages potentially apply here: personal liability and medical payments to others coverages. It is clear the trial court determined National Farmers must indemnify Kevin Koen for his medical expenses up to the applicable policy limits. Whether or not this determination was correct is discussed in the second issue below.

■ Liability insurance does not directly cover damages claimed by the injured person; it covers the insured's personal liability incurred as a result of the victim's injuries. Thus, a court must determine what persons may incur liability as a result of the injury and whether the insurer, pursuant to the policy's terms, must defend and indemnify those persons.

Here, the potentially liable persons are the four Carlsons: Annie, Raymond, Marie, and Paul. Annie, however, was not named as a defendant in the underlying action, nor was she joined in this declaratory judgment action. Consequently, the trial court was not adjudicating whether Annie was entitled to defense and indemnity. Indeed, any final judgment in this declaratory judgment action is not binding upon Annie because she is not a party to this action. *See* Minn.Stat. § 555.11 (1988).

The trial court, therefore, must have been declaring that National Farmers must defend and indemnify Raymond, Marie, and Paul, who were named as defendants both in the underlying and in this action. Upon a close reading of the policy, however, it is apparent these three persons are not entitled to defense and indemnity under the policy which was issued to Annie.

The policy states that National Farmers will provide a defense and will pay damages for which the *insured* is legally liable. As discussed, "insured" means "[Annie Carlson] and * * * residents of [her] household [and] * * * any person engaged in [Annie's] employment." The parties stipulated that Raymond, Marie, and Paul do not reside in Annie's household. Thus, the only basis for finding they were "insureds" would be that they were Annie's employees. Such a finding, however, would be clearly erroneous because Annie had no involvement in the auction and exercised no supervision or control, nor did she provide any means of employment to those working at the auction. *See Wangen v. City of Fountain,* 255 N.W.2d 813, 815 (Minn. 1977). Consequently, Raymond, Marie, and Paul are not insureds under National Farmers' policy and National Farmers is not obligated to defend or indemnify them.

In light of the fact that the trial court itself concluded Raymond, Marie, and Paul were not insureds, it is not clear why the trial court decided there was a duty to defend and indemnify. Perhaps, it believed coverage was available because Annie owned a half interest in many items sold at the auction and that, therefore, Raymond was acting as her agent. Even assuming Raymond was her agent, the policy includes as insureds only employees and not agents. To the extent Annie herself, as principal, could be held liable for Raymond's actions, National Farmers might be obligated to defend and indemnify her; however, it need not defend and indemnify her agent. The policy imposes no such duty and we know of no authority requiring an insurer to defend and indemnify an insured's agent unless such an obligation appears in the insurance policy itself.

2. Because no liability coverage is available under the National Farmers' policy, the only potential coverage is medical payments to others coverage. The injured person, Koen, need not be an insured to be covered; it is sufficient that he was on the premises with the permission of the insured (Annie Carlson), a fact which no one disputes. As discussed, coverage is excluded if the injuries arose out of the maintenance, use, ownership, loading or unloading of a motor vehicle; however, a motorized vehicle in dead storage is not a "motor ve-

hicle." Consequently, if the GMC was in dead storage, medical payments to others coverage is available to Koen.

National Farmers argues the trial court erred in determining the GMC was in dead storage at the time of the accident. Whether or not the vehicle was in "dead storage," a term not defined in the policy, depends upon the meaning of "dead storage" as set forth in the policy. This involves construction of the insurance contract, which is a question of law as applied to the facts presented. *Iowa Kemper Insurance Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978).

■ Although no Minnesota court has dealt with the issue, courts in several other jurisdictions have construed the dead storage exception to the motor vehicle exclusion in homeowners policies. In *Broadway v. Great American Insurance Co., Inc.,* 465 So.2d 1124 (Ala.1985), the homeowner and a friend had just installed a rebuilt engine into a car which had not run for about three months. Because the carburetor was dry, the friend poured gasoline from a cup into the carburetor while the homeowner turned the ignition switch. The engine backfired, the cup of gasoline ignited, and the friend threw the cup, striking the vehicle and spattering burning gasoline onto a third party who was just looking on, as Koen was in this case.

The homeowners policy contained a dead storage exception to the motor vehicle exclusion substantially similar to the one contained in the National Farmers' policy. Although the *Broadway* court did not define the term "dead storage," it stated that the terms "maintenance of a motor vehicle" and "dead storage" are mutually exclusive. Thus, a vehicle undergoing any maintenance could not simultaneously be in dead storage. *Id.* at 1127. The court then went on to hold that pouring gasoline into the

carburetor to restart the car constituted maintenance and that, therefore, the car was not in dead storage. *Id.* at 1129.

*Broadway* has been expressly followed in two other jurisdictions where the courts expressed their agreement that a vehicle undergoing maintenance cannot be in dead storage. *See Holliman v. MFA Mutual Insurance Co.,* 289 Ark. 276, 711 S.W.2d 159 (1986); *Prudential Property and Casualty Insurance Co. v. Allaire,* 25 Mass. App.Ct. 159, 516 N.E.2d 179 (1987), *pet. for rev. denied* (Mass. Jan. 25, 1988). We believe the reasoning in these cases is sound and thus hold as a matter of law a motorized vehicle undergoing maintenance cannot at the same time be in dead storage.

We have considered the cases of *Sharpe v. State Farm Fire & Casualty Co.,* 558 F.Supp. 10 (E.D.Tenn.1982), and *Nationwide Mutual Fire Insurance Co. v. Allen,* 68 N.C.App. 184, 314 S.E.2d 552 (1984), *pet. for rev. denied* (N.C. Aug. 28, 1984), and find them distinguishable. In *Sharpe,* the vehicles were sitting in outbuildings and thus were not being maintained when they were damaged by fire to the outbuildings. In *Nationwide,* although the court stated the vehicle was not in dead storage, it took great pains to explain the damage was caused by the insured's handling of combustible materials in the immediate vicinity of ignition sources, not by the insured's maintenance of the vehicle. 68 N.C.App. at 189, 314 S.E.2d at 555.

■ The next question is whether the GMC was undergoing maintenance [4] when the injury occurred, which is a question of law. *Continental Western Insurance Co. v. Klug,* 415 N.W.2d 876, 877 (Minn.1987). Many automobile insurance policies, as well as Minn.Stat. § 65B.43, subd. 3 (1986), employ the term "maintenance or use" to determine whether a specific injury relating to a motor vehicle is covered. We see no

---

4. We note that other jurisdictions have held as a matter of law that pouring gasoline into a carburetor to start an engine constitutes maintenance. *See Broadway,* 465 So.2d at 1129; *Volkswagen Insurance Co. v. Dang Ba Nguyen,* 405 So.2d 190, 196 (Fla.Dist.Ct.App.1981), *pet. for rev. denied* (Fla. July 16, 1982). However, we believe the question of maintenance must be analyzed under the well-developed statutory and case law of Minnesota.

reason why this statutory definition would not apply to the term "maintenance or use" as set forth in a homeowners insurance policy as well.

> "Maintenance or use of a motor vehicle" is
>
> maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it.

*Id.* The *Klug* court articulated a three factor analysis to determine whether an accident arose out of the use or maintenance of a motor vehicle. 415 N.W.2d at 878.

First, the court must determine the vehicle was an "active accessory" in causing the injury. Second, it must determine there was no act of independent significance to break the causal link between use of the vehicle and the injuries inflicted. Finally, it must determine the accident resulted from use of the vehicle for transportation purposes. *Id.*

■ Here, the first factor is satisfied because the GMC was an active accessory, the spark from its carburetor being the ignition source of the fire. The second factor is also met because there was no intervening act of independent significance to break the causal link between the fire's starting, Paul Carlson's reflexive action of throwing the flaming can, and the can's striking Koen. Finally, although the GMC was not transporting anyone when the injury occurred, we believe the third factor is nonetheless satisfied.

In *Midwest Family Mutual Insurance Co. v. Karpe*, 430 N.W.2d 856 (Minn.Ct. App.1988), *pet. for rev. denied* (Minn. Dec. 21, 1988), this court explained that in "maintenance" cases, as opposed to "use" cases, it is not necessary to show the vehicle was at the time being used for transportation purposes because

> maintaining a motor vehicle generally presupposes use of the vehicle for trans-

portation purposes, which, in turn, satisfies the "use" element of the *Klug* test. Such an analysis is consistent with pre-*Klug* "maintenance" cases embodying only the "causal connection" and "active accessory" prongs of what became the *Klug* analysis.

430 N.W.2d at 859–60. In this case, such a presupposition that the GMC was used for transportation purposes is valid: it had been driven the day before to tow the Ford pickup to the auction site; it was being sold as an item of transportation; and its engine was being started to show potential buyers it was capable of transportation. The fact that Raymond no longer wanted it for his own transportation purposes does not change the GMC's character as an item of transportation for purposes of the applicable motor vehicle exclusion in National Farmers' homeowners policy. Consequently, because the GMC was undergoing maintenance, it was not in "dead storage." *See Broadway,* 465 So.2d at 1127. Therefore, the motor vehicle exclusion applies to preclude medical payments to others coverage under the policy.

■ We believe this determination appropriately highlights the distinction between homeowners and automobile insurance policies. Motor vehicles are inherently dangerous instrumentalities and homeowners policies generally do not contemplate coverage of injuries when the vehicle is maintained or used in one of its inherently dangerous capacities. One inherently dangerous aspect is a motor vehicle's use of highly volatile materials (gasoline) around ignition sources (spark plugs). This was precisely the cause of the accident in this case. Accidents caused by maintenance or use of a vehicle in such an inherently dangerous capacity are not appropriately covered in a homeowners policy, but rather in an automobile policy which requires consequently higher premiums for the increased risk of injury. As explained at note 3 above, Raymond did not obtain automobile insurance on the GMC.[5]

---

5. Koen also claims coverage under National

Farmers' policy because the GMC was not sub-

**856**

■ 3. Although the North Star policy excludes coverage for liability and medical payments resulting from ownership, maintenance, use, loading or unloading a motorized vehicle, this exclusion does not apply when the injured person is performing duties as a "domestic employee" of an insured. The policy defines "domestic employee" as:

> A person employed by an insured to perform duties in connection with the maintenance or use of the insured premises. This includes persons who perform household or domestic services or duties of a similar nature elsewhere for an insured. This does not include persons while performing duties in connection with an insured's business.

Again, we are called upon to construe a provision in an insurance contract, which poses a question of law as applied to the facts of this case. *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d at 886–87. Specifically, we must determine if Koen was employed by Raymond to perform duties in connection with maintenance or use of the insured premises. For two reasons, we believe the trial court erred in its determination.

First, in holding Koen was not a domestic employee, the trial court focused on Raymond's ultimate objective, to raise money for his medical costs, and gave little weight to the specific tasks Koen performed. Although the primary objective was not to clean up the premises, that is actually what Koen did in preparing for the auction.

■ Secondly, we believe that portion of the domestic employee definition excluding

persons working in connection with an insured's business evidences the overriding concern that the homeowners policy not cover losses within the scope of workers compensation coverage. *See* Minn.Stat. § 176.041, subd. 1(k), (n) (1988). Conversely, where, as here, the injured person is *not* working in connection with the insured's business,[6] and thus not entitled to workers compensation benefits, courts should be willing to liberally construe the definition of domestic employee to find coverage, if possible. *See Olson v. Blue Cross & Blue Shield of Minnesota*, 269 N.W.2d 697, 700 (Minn.1978). Such a liberal construction is appropriate here where Koen's work resulted in the clean-up, i.e., maintenance of the premises. Therefore, we hold Northstar's policy provides liability coverage to Raymond and Marie Carlson and to Paul Carlson,[7] and also provides coverage to Koen for his medical costs under the medical payments to others provisions.

## DECISION

That portion of the trial court's declaratory judgment determining National Farmers' policy provides coverage for Koen's injuries is reversed. That portion of the trial court's declaratory judgment determining North Star's policy provides no coverage is reversed.

Reversed.

---

ject to motor vehicle registration laws, thereby falling within one of the policy's exceptions to the motor vehicle exclusion. The GMC was in fact subject to registration laws: first, because it was not an implement of husbandry or tractor, *see* Minn.Stat. § 168.012, subd. 2 (1984); and second, because Raymond Carlson did not make appropriate application to exempt the GMC. *See* Minn.Stat. § 168.012, subd. 7 (1984).

**6.** We find *United States Fidelity & Guaranty Co. v. Rosso*, 521 A.2d 301 (Me.1987), distinguish-

able for the very reason that in *Rosso* the claimant was working in connection with the insured's business, whereas Koen was not.

**7.** Raymond and Marie Carlson receive liability coverage because they are the named insureds; Paul receives liability coverage because he is an "insured" by virtue of his being Raymond's domestic employee. *See supra* at note 1.