**MINNESOTA PROPERTY
INSURANCE, Respondent,**

v.

**William SLATER, et al., Respondents,**

**Carol Pierce, Appellant.**

**No. A03–556.**

Court of Appeals of Minnesota.

Jan. 20, 2004.

Kevin S. Carpenter, Carpenter Injury Law Office, St. Cloud, MN, for appellant.

Daniel A. Beckman, Kathleen M. Loucks, Gislason & Hunter, et. al. LLP, Minnetonka, MN, for respondent Minnesota Property Insurance.

William Slater, Staples, MN, respondent pro se.

Marlene Slater, Staples, MN, respondent pro se.

Considered and decided by Chief Judge TOUSSAINT, Presiding Judge; MINGE, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from summary judgment in favor of respondent Minnesota Property Insurance, appellant Carol Pierce argues that the district court improperly determined that two insurance policy exclusions applied. Because the district court did not err in its interpretation of the terms of the insurance policy, we affirm.

## FACTS

William Slater purchased a 1985 International cabover truck on a rent-to-own basis from Larry Hanson. The truck was operable but in need of general repair to bring it into compliance with Minnesota Department of Transportation (MnDOT) regulations for commercial use of a motor vehicle. Slater began making repairs on the truck at his home. Slater raised the cab of the truck in order to complete the repairs. Once the repair work was completed, Slater intended to use the truck to pull a belly dump trailer[1] in his hauling business.

1. A belly dump trailer unloads its contents through an opening on its underside.

During a visit to Slater's home, appellant Carol Pierce and her husband were looking at the truck when the cab fell on Pierce and injured her. Testimony differs as to the actual reason the truck fell. By affidavit testimony, Pierce stated that she was not touching the vehicle at the time it fell. Slater's deposition testimony indicates that the truck was off center and Pierce was helping to push the cab back to the center position. Both Slater and Pierce agree that Pierce's injuries were caused by the cab when it fell.

Pierce brought a personal injury lawsuit against Slater, who sought coverage for the damages arising from the accident under his homeowners policy with respondent Minnesota Property Insurance. Minnesota Property Insurance declined coverage, claiming that the accident was excluded under the policy. Minnesota Property Insurance commenced a declaratory judgment action seeking a ruling that Pierce's injuries were not covered by the insurance policy. Pierce and Minnesota Property Insurance brought cross-motions for summary judgment. The district court entered judgment in favor of Minnesota Property Insurance, concluding that two policy exclusions applied and precluded coverage. This appeal followed.

## ISSUES

I. Did the district court err in concluding that the "maintenance or use" of a motor vehicle exclusion of the homeowners insurance policy precluded coverage?

II. Did the district court err in concluding that the business-pursuits exclusion of the homeowners insurance policy precluded coverage?

## ANALYSIS

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The question of whether an insurer has a duty to defend is a legal question subject to de novo review. *Metro. Prop. & Cas. Ins. Co. & Affiliates v. Miller,* 589 N.W.2d 297, 299 (Minn. 1999). "Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law[, which] we review de novo." *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 609 (Minn. 2001).

Provisions in an insurance policy are interpreted according to their plain meaning, consistent with what a reasonable person in the insured's position would have understood the words to mean. *Farmers Home Mut. Ins. Co. v. Lill,* 332 N.W.2d 635, 637 (Minn.1983). Insurance-exclusion clauses are strictly interpreted against the insurer. *Home Mut. Ins. Co. v. Snyder,* 356 N.W.2d 780, 783 (Minn.App. 1984). An insurer that denies coverage because of a policy exclusion bears the burden of proving that the exclusion applies. *Milwaukee Mut. Ins. Co. v. City of Minneapolis,* 307 Minn. 301, 307, 239 N.W.2d 472, 475 (1976).

### I.

Pierce argues that the district court erred in determining that the "maintenance or use" exclusion of the homeowners insurance policy applies to avoid coverage for injuries sustained by Pierce. The relevant exclusions in Slaters homeowners insurance policy provide:

**Medical Payments to Others** do not apply to "bodily injury" or "property damage": . . .

  f.  Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of motor

vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured"; . . . .

This exclusion does not apply to: . . .

(4) A vehicle or conveyance not subject to motor vehicle registration which is: . . .

(c) In dead storage on an "insured location[.]"

According to the language of the policy, if the injury occurred while the truck was undergoing maintenance, the homeowners insurance policy does not provide coverage unless the dead-storage exception applies. Thus, we must determine as a matter of law, in light of the undisputed facts, (1) whether the truck was undergoing maintenance and (2) whether it was in dead storage. This determination is a question of law. *See Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876, 877–79 (Minn.1987) (reviewing de novo interpretation of insurance policy and application of policy to the facts).

To begin this analysis, we consider whether the vehicle was undergoing maintenance as contemplated by the insurance policy. The term "maintenance or use of a motor vehicle" is used in many automobile insurance policies and is defined by Minn. Stat. § 65B.43, subd. 3 (2002). *N. Star Mut. Ins. Co. v. Carlson*, 442 N.W.2d 848, 854–55 (Minn.App.1989), *review denied* (Minn. Sept. 21, 1989). When considering whether the "maintenance or use of a motor vehicle" exclusion of a homeowners insurance policy applied to the accident in question, the *Carlson* court adopted the definition of the phrase employed by the No–Fault Automobile Insurance statute in section 65B.43, subdivision 3. *Id.* at 855. Under Minnesota law, " 'maintenance or use of a motor vehicle' is maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a

vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3.

■ The Minnesota Supreme Court has set out a three-part test to determine if an accident arose out of the "maintenance or use" of a motor vehicle. *Klug*, 415 N.W.2d at 878. First, "the extent of causation between the [vehicle] and the injury" must be determined. *Id.* If the requisite degree of causation is established, next a determination must be made as to whether an act of independent significance intervened to break the causal link between the maintenance or use of the vehicle and the injury. *Id.* Finally, if the causal link is unbroken, whether the accident resulted from the use of the vehicle for transportation purposes must be determined. *Id.*

Pierce concedes that the first factor of the *Klug* analysis is not in dispute. The truck caused the injury. We, therefore, proceed to the second *Klug* factor about which the district court concluded that,

> when the facts of this case are compared with the facts in other reported cases involving the same issue, it is quite clear that the allegedly negligent acts or omissions of Mr. Slater . . . did *not* involve an act independent from the maintenance or repair work that was being done on the truck.

Pierce argues that there were three acts of independent significance to break the causal link between Slater's maintenance of the truck and Pierce's injury—Slater's negligence in allowing Pierce and her husband to stand near the truck cab, his negligence in failing to warn them that the cab might fall, and his negligence in propping up the cab. We disagree. Because all of Slater's allegedly negligent acts are related to the maintenance of the vehicle, there is no evidence of an intervening act of *independent significance* breaking the

causal link between the maintenance and the injury.

Slater was fixing leaking hoses on the truck. To do so, he needed to lift the cab and hoist the truck in order to see the area in need of repair. The vehicle's fall from the position necessary to perform the maintenance directly caused Pierce's injury. There is conflicting testimony as to Pierce's role in the maintenance of the vehicle at the time of the injury. But resolution of that factual dispute is not relevant to our determination because the undisputed evidence establishes that Pierce's injury resulted when the truck fell from the position Slater placed it in to perform the maintenance.

Pierce also contends that, in concluding that there was not an intervening act of independent significance, the district court disregarded the controlling precedent of *N. Star Mut. Ins. Co. v. Johnson*, 352 N.W.2d 791 (Minn.App.1984), *review denied* (Minn. Jan. 9, 1985). *Johnson* involved an accident that occurred when a pickup truck with a sprayer bolted to the bed of the truck was being driven home from a social gathering. The sprayer had two arms that extended to spray chemicals. The left arm of the sprayer suddenly extended and smashed into the windshield of a car traveling in the opposite direction, killing one passenger and injuring two others. *Id.* The accident victims sued the driver, alleging negligent maintenance of the sprayer, which the driver bolted onto the truck every spring, and failure to operate the truck at a safe speed. *Id.* North Star, the driver's farm insurance carrier, argued that, because the sprayer was bolted to the truck, it was part of the vehicle and should be covered under the driver's automobile insurance policy, not the farm insurance policy which insured against the risk of negligent use or maintenance of farm equipment. *Id.* at 793. The *John-*

*son* court concluded that the negligence in securing the sprayer arms was an independent act unrelated to the operation or use of the vehicle. As such, Johnson's farm insurance policy applied. *Id.* at 793–94.

From our review, we conclude that *Johnson* is inapposite for two reasons. First, the facts here do not demonstrate any causal act or omission that is independent of Slater's maintenance and repair work. Second, the *Johnson* court's rationale focused primarily on the definition of "maintenance" or "use" of farm equipment under the farm insurance policy, *not* on whether there was an independent act that broke the causal link between the use of the vehicle and the injury. The *Johnson* court concluded that attaching the farm equipment to the motor vehicle did not prevent the farm insurance policy from covering liability under the motor vehicle exclusion where the farm insurance policy insured against the risk of negligent use or maintenance of farm equipment, such as the sprayer; and the only means of using the farm equipment was in conjunction with a motor vehicle. *Id.* at 793–94.

The third *Klug* factor requires the district court to determine whether the accident resulted from the use of the motor vehicle for transportation purposes. In *Midwest Family Mut. Ins. Co. v. Karpe*, 430 N.W.2d 856 (Minn.App.1988), *review denied* (Minn. Dec. 21, 1988), this court found that "maintenance" cases, as opposed to "use" cases, automatically satisfy the third factor. *Id.* at 859–60. "[M]aintaining a motor vehicle generally presupposes use of the vehicle for transportation purposes[.]" *Id.* Here, the truck had been driven two days before the accident, and it was being repaired for use in a business involving hauling or transporting dirt. Because Slater's repair work involved maintenance of a motor vehicle as contemplated by the insurance policy, the third *Klug*

factor also applies here. *See Carlson*, 442 N.W.2d at 855 (applying the *Karpe* analysis and finding that the third factor automatically applies).

Pierce next argues that the dead-storage exception to the motor vehicle exclusion applies. She contends that the term "dead storage" is ambiguous; thus, the issue of coverage should be resolved in favor of the insured. Whether the language of an insurance policy is ambiguous is a question of law. *St. Paul Fire & Marine Ins. Co. v. Nat'l Computer Sys., Inc.*, 490 N.W.2d 626, 631 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992). We resolve any ambiguity in the terms of an insurance policy against the insurer and in favor of the insured. *Id.* An ambiguity exists when a word or phrase in an insurance policy is reasonably subject to more than one interpretation. *Reinsurance Ass'n of Minn. v. Hanks*, 539 N.W.2d 793, 796 (Minn.1995).

■ Although the insurance policy does not define the term "dead storage," this court has previously held that a "vehicle undergoing any maintenance could not simultaneously be in dead storage." *Carlson*, 442 N.W.2d at 854. As discussed above, Slater's work on the vehicle constituted maintenance. The truck, therefore, was not in dead storage. Additionally, Slater had driven the truck two days before the accident, and he testified by deposition that the vehicle was drivable at the time of the accident. That the repairs were needed to satisfy MnDOT's registration requirements for commercial hauling does not render the truck in dead storage. Because the homeowners insurance policy exclusion for "maintenance and use of a motor vehicle" applies, Minnesota Property Insurance is not obligated to defend the insured in this action.

## II.

■ We next consider whether the maintenance of the vehicle arose out of Slater's business pursuit, establishing another basis for excluding coverage. The insurance policy excludes coverage of claims of bodily injury that "aris[e] out of or in connection with a 'business' engaged in by an 'insured.' " The insurance policy's definition of "business" "include[s] trade, profession or occupation."

> In order for an act to be considered part of a business pursuit it must be an act that contributes to, or furthers the interest of, the business and one that is peculiar to it. *It must be an act that the insured would not normally perform but for the business, and must be solely referable to the conduct of the business.*

*Milwaukee Mut. Ins. Co.*, 307 Minn. at 309, 239 N.W.2d at 476 (emphasis in original) (quotations omitted).

Our analysis of this issue begins by determining whether repair and maintenance work performed by Slater contributes to or furthers his business. *See id.* Slater purchased the truck to start his belly dumping business. He was self-employed at the time of the accident. Slater testified that the truck was operable but could not be used in his business until he met MnDOT registration requirements for commercial hauling. The maintenance work was performed to enable the truck to meet MnDOT standards. The business name appeared on the door of the truck, and Slater had a contract for work to begin as soon as the truck met the legal requirements for use in the hauling and transport business. We conclude that Slater's repair and maintenance work on the truck satisfies the definition of a business pursuit. *See id.*

Pierce cites a number of cases in support of her argument that the district court interpreted the business-pursuits exclusion too broadly. In *Reinsurance*

*Ass'n of Minn. v. Patch,* 383 N.W.2d 708, 711 (Minn.App.1986), the insured, who was employed by a construction company and repaired bicycles in his spare time as a hobby, was sued for injuries sustained allegedly due to negligent repairs on a bicycle. The business-pursuits exclusion did not apply because the insured's bicycle-repair activities were not for the purpose of earning a livelihood, nor did they amount to "a trade, profession or occupation." *Patch,* 383 N.W.2d at 712. Here, in contrast, the repair of the vehicle was in direct pursuit of Slater's livelihood. Indeed, Slater was bringing the vehicle up to MnDOT standards exclusively for business purposes.

In *Bankers Standard Ins. Co. v. Olwell,* 309 N.W.2d 799 (Minn.1981), a couple with four children provided daycare services in their home for two children in addition to caring for their own children. The two daycare children were injured while in the care of the daycare provider, giving rise to a dispute regarding whether the daycare providers' homeowners insurance policy provided coverage for the injuries. The Minnesota Supreme Court held that the homeowners policy provided coverage because, although the incident fell under the business-pursuits exclusion, an exception to the exclusion applied because providing care and maintaining a safe environment for children were "clearly incident to [the] nonbusiness regimen of maintaining a household and supervising ... children." *Id.*

Here, there is no evidence from which a court could conclude that the maintenance of the vehicle also was incidental to a nonbusiness pursuit. Repair of the vehicle facilitated Slater's efforts to achieve his business aspirations. Once the repair and maintenance work was completed, the vehicle would be used for Slater's livelihood. But for the repairs, Slater could not use the truck for its intended purpose, commercial transportation. Without the truck, there would be no business. That Slater had not hauled his first load in the truck does not preclude the truck repair, which was necessary to conduct the hauling and transport business, from satisfying the business-pursuits exclusion of the insurance policy.

## DECISION

Because the accident arose out of the maintenance of the vehicle, the insured's homeowners insurance policy does not provide coverage for the injuries. Moreover, the business-pursuits exclusion in the insurance policy applies because the repair activity was in furtherance of the insured's business pursuit.

**Affirmed.**